In re Frank A. **MARIANNI, Jr.**, Phyllis M. Marianni, Debtors.

In re Daniel D. **DALTRY,** Marilyn E. Daltry, Debtors.

Robert C. **HOBSON** and Joseph A. Bachman, Plaintiffs,

v.

James J. **O'CONNELL,** Esquire, Interim Trustee, Defendant.

Bankruptcy Nos. 81–00511K, 81–00512K. Adv. No. 82–0228K.

United States Bankruptcy Court, E. D. Pennsylvania.

June 25, 1982.

Jeffrey Meyers, Philadelphia, Pa., for plaintiffs.

James J. O'Connell, Philadelphia, Pa., interim trustee/defendant.

Lawrence J. Tabas, Philadelphia, Pa., for debtors.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

This case reaches the Court on a complaint by a purchaser of commercial property founded on breach of contract against the Interim Trustee in the two (2) Chapter 7 cases. After hearing duly held and consideration of the appropriate state law, the Court finds that relief must be denied.[1]

On January 15, 1981, the plaintiffs, Robert C. Hobson and Joseph A. Bachman, entered into an Agreement of Sale with the debtors, Frank A. Marianni, Jr., Phyllis M. Marianni, Daniel D. Daltry and Marilyn E. Daltry which involved the sale of commercial real estate owned by the debtors and located at 1611 Manning Boulevard, Levittown, Bucks County, Pennsylvania. Subsequent to this Agreement of Sale, the debtors filed for relief under the Bankruptcy Code. On February 23, 1981, James J. O'Connell, Esquire, was appointed by this Court as an Interim Trustee and was allowed to assume the aforesaid executory contract which provided that settlement be held on or before May 15, 1981 for the agreed purchase of $160,000.

In April of 1981, the plaintiffs participated in a pre-settlement inspection of 1611 Manning Boulevard and allegedly discovered that the property had been materially altered. Specifically, plaintiffs alleged that three (3) room air conditioners and one (1) rooftop gas hot air heater had been removed from the premises, which eventually cost $1,950 to replace and install; that the trustee failed to maintain the property in a reasonable manner which resulted in excessive debris, trash, water damage and damage to two (2) overhead doors which cost $2,914 to replace; and that trustee failed to remove certain trade fixtures which constituted personalty which resulted in an added expense of $3,400 to the plaintiffs to remove.

As a result, plaintiffs informed the Interim Trustee that it was the plaintiffs' position that the trustee was in breach of the Agreement of Sale and that therefore, the plaintiffs did not intend to proceed to settlement. In response, the Interim Trustee and the plaintiffs agreed that the Interim Trustee would escrow $9,476 from the purchase price of $160,000 and that said funds would be held in escrow in order to allow the settlement to be completed without jeopardizing the contractual rights of the plaintiffs. Subsequent to the settlement, on August 10, 1981, the plaintiffs attempted to recover reimbursement in the amount of $8,264 for expenditures made in repairing or replacing defects in the aforesaid property.

The issue before this Court, therefore, is whether the removal of three (3) air conditioners and a rooftop heater, the failure to maintain property in a reasonable manner, and the failure to remove certain trade fixtures constitute a material alteration of the premises under contract to such an extent that a breach of contract has resulted. We must answer with an unequivocal no.

In addressing this issue, we will first focus on the removal of the three (3) room air conditioners and one (1) of numerous rooftop heaters. The plaintiffs contend that this equipment constitutes part of the real property conveyed by the contract at issue and therefore, its removal breached this instrument. However, case law does not support this contention. "The general rule is that when equipment is so physically annexed to the land that it cannot be removed without material injury to the land or some structure thereon, it is deemed incorporated into the realty." *Kaczmarek v. Mesta Machine Company*, 324 F.Supp. 298, 300 (W.D.Pa.1971). Thus, because of the portable nature of this equipment and the ease of removal, it would be unreasonable to argue either that physical annexa-

---

1. This Opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

tion was present or that removal would result in physical injury to the structure.

In addition, even should this Court find that the aforesaid equipment constituted realty despite the foregoing, the plaintiffs would be hard-pressed to refute the well-reasoned principle set forth in *Daly Brothers Shoe Company v. H. Jacob and Sons*, 49 F.Supp. 118 (M.D.Pa.1943). Here, it was held that when fixtures are "... intended to be disannexed from the building, and were in fact so separated and disannexed ... all fixtures become personal property." *Id.* at 122. The implication here is that if equipment is severed either expressly or constructively, it is classified as personal property.

In the case at hand, although an express intention to sever this equipment from the realty might not have been present, certainly there was a constructive intention. As previously discussed, in addition to the fact that this equipment was portable and thus easily removable, the room air conditioners were non-essentials because the facility was centrally air conditioned.

In short, therefore, because these room air conditioners were non-essential, coupled with their portability, it is apparent that the debtors did not consider this equipment realty but personal property, resulting in the removal of this equipment. Therefore, based upon the foregoing case law, it is unquestionable that plaintiffs be denied recovery for the removal of the three (3) room air conditioners.

■ With regard to the heating system, the plaintiffs' claim that its removal was in violation of the terms of the contract is more credible. Because of the nature of a heating system, it has traditionally been part of the real property conveyed, *Schermer v. Wilmart*, 282 Pa. 55, 127 A. 315 (1925), and as such, does not conform to either of the above mentioned exceptions of portability or non-essentiality. In addition, Paragraph 7 of the written Agreement of Sale specifically states that "all plumbing, heating, and lighting fixtures" are to be conveyed as part of the realty. Unquestionably, therefore, the removal of the heating

system was in violation of the Contract. However, the problem arises in the amount of damages that the plaintiffs seek, that is, the cost of replacement. This Court, following Pennsylvania law, may only confer a measure of damages equal to the value of the property at the time of destruction. "When there is a total destruction [of personal property], the measure of damages would be the actual value of the property itself, taking into consideration its age, condition, and any other circumstances affecting it, less anything salvaged from it." *Russell v. United States*, 113 F.Supp. 353, 356 (M.D.Pa.1953). Applied to the case at hand, removal of personal property is tantamount to total destruction of the property. Therefore, the correct measure of damages for the heating system is its value at the time of its removal, which because of age and depreciation, is substantially less than the cost of replacement. *Jones v. Monroe Electric Company*, 350 Pa. 539, 39 A.2d 569 (1944); *Durante v. Alba*, 266 Pa. 444, 109 A. 796 (1920). Therefore, because the plaintiffs have failed to produce any evidence of the separate value of the heating system at the time of its removal, taking into account its age, condition, in short, its depreciated value; but instead, have chosen to combine this demand for damages with the misguided demand for the replacement cost of the three (3) room air conditioners, and have aggravated the problem by erroneously requesting its replacement cost, this Court, lacking monetary parameters for the value of the heating system, must deny relief.

■ Moving to the second contention of the plaintiffs' three-pronged complaint, they aver that there is an implied duty to maintain a property subject to an Agreement of Sale in a reasonable manner. The major case which the plaintiffs cite in support of this argument is *Rappaport v. Savitz*, 208 Pa. Superior Ct. 175, 220 A.2d 401 (1966). "The general rule is that the purchaser must bear any loss occassioned to the property occurring after execution of the contract and before delivery of the deed. This rule, however, has a necessary exception where damage results from the fault of

the vendor. If the vendor retains possession, an obligation to maintain the premises in a reasonable manner is implied in the absence of a stipulation to the contrary." *Id.* at 177, 220 A.2d 401.

While this position appears unassailable, in reality, it is rather weak. In *Rappaport*, the factual situation involved only two (2) parties, the vendor and vendee. In the present case, the classic vendor-vendee relationship is complicated because of bankruptcy law which injects a variable, the trustee. Consequently, it is the trustee who becomes the vendor. 11 U.S.C. § 541(a)(1) and 11 U.S.C. § 363(b). Under this rubric, the trustee is granted all of the legal and equitable interests in the property of the debtor with a view toward the effective liquidation of all of the debtor's property. Consequently, it is the trustee who is the vendor, nor the debtor. Quite clearly, therefore, *Rappaport* is inapposite because the necessary exception to the general rule does not apply to the case at hand because any material alteration has resulted from the actions of the debtor, not that of the trustee-vendor. In conjunction, since the trustee was not in actual physical possession of the demised property, there is no implied obligation to maintain the premises. As a result, we are back to the general rule which states that the purchaser must bear any loss occassioned to the property occurring after execution of the Contract and before delivery of the deed.

Secondly, the trustee is under no obligation to cure any damage to the property which he has been appointed to administer. His only obligation is to the creditors to conserve estate assets and therefore, maximize the distribution of assets to them. "It is the concomitant goal of the Trustee, during administration of the bankrupt estate to carefully preserve the assets in his possession upon pain of surcharge, from . . . dissipation." Collier on Bankruptcy, Vol. 2A, ¶ 47.08[1] (14th Ed. 1978). If any of these obligations to the creditors are breached, it is the trustee who then will be subject to action on a breach of these obligations. Such a breach could include the payment of estate assets to remedy the failure by the Trustee to maintain the property in a reasonable manner. As a result, there is no duty on the part of the trustee to maintain the property with monies derived from the assets of the estate. *In re Nadler*, 8 B.R. 330 (Bkrtcy.E.D.Pa.1980).

■ Finally, the last argument which the plaintiffs expouse in support of the alleged material alteration which they claim breached their contract was the trustee's failure to remove or have removed certain trade fixtures. Plaintiffs alleged that such failure damaged them to the extent of $3,400. While the written contract is silent concerning this matter, plaintiffs attempted to introduce, through parol evidence, contemporaneous oral agreements between themselves and the debtors stipulating that the latter would remove such fixtures before settlement. For precisely the reasons that the plaintiffs cite, this Court must reject this argument in toto.

Plaintiffs' initial argument in support of the introduction of parol evidence stems from its admissability to clarify any ambiguity. While this position is undeniable in the abstract, it is clearly inapplicable to the case at hand. Because the contract is completely silent with regard to the removal of these trade fixtures, and because it recites that the contract itself is an integrated agreement, ambiguity is nowhere to be found. "A contract is ambiguous if, and only if, it is reasonably or fairly susceptible of different constructions; it is not ambiguous if the Court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends." *Lamar v. Granger*, 99 F.Supp. 17, 35 (W.D.Pa.1951). In light of the foregoing, it is obvious that no ambiguity exists in the present contract. Its total silence concerning the removal of the trade fixtures is tantamount to an acknowledgment by the debtor that no affirmative action would be taken on his part.

Nor is this an isolated opinion but one which has been repeatedly invoked when contracts are silent concerning a certain

subject matter. In such cases, courts have almost unanimously held that the contract is not ambiguous with regard to the matter; consequently, parol evidence is barred. "In order to consider evidence of negotiations [parol evidence], we would have to find that silence amounts to ambiguity in the contract. There is simply no basis for such a holding. A [contract] which is an integrated document, and unambiguous in its terms, must be interpleted within its four corners." *U. S. Gypsum v. Schiavo Bros., Inc.*, 450 F.Supp. 1291, 1303 (E.D.Pa.1978). Unquestionably, therefore, ambiguity is not present in the contract at issue. Instead, contractual silence with the absence of different constructions and controverted wording capable of different meanings, manifests clarity, not ambiguity.

■ In addition to the foregoing, the plaintiffs further base their argument for the introduction of parol evidence on its usefulness in determining the intentions of the parties to the contract. This Court finds little merit in this argument. "Parol evidence is not admissible when the contract is silent as to that provision. The short answer to such a contention is that if it had been the intent of the parties to provide for such an item, it should have been inserted in the agreement." *U. S. Gypsum v. Schiavo Bros., Inc.*, 450 F.Supp. 1291, 1302 (E.D.Pa.1978). In addition, parol evidence is only admissable to explain the subject matter, not to vary the terms of the contract. *Daly Bros. Shoe Company v. H. Jacob and Sons*, 49 F.Supp. 118 (M.D.Pa. 1943). Intrinsically, therefore, any attempt to introduce parol evidence concerning a provision (such as intent) about which the contract is silent, must vary the terms of that contract and is accordingly inadmissable.

■ Finally, plaintiffs attempted to introduce parol evidence through the presence of fraud. While it is well settled that when fraud is involved, the parol evidence rule does not bar testimony concerning oral agreements, despite the existence of an integration clause in the contract, *National Building Leasing, Inc. v. Byler*, 252 Pa.Super. 370, 381 A.2d 963 (1977), naked asser-

tions of fraud are not sufficient. Instead, both statutory and case law require that the plaintiff prove fraud by clear, precise, and indubitable evidence. "Not only must the pleading aver the omission of the oral promise from the writing through fraud, accident or mistake, but it must also aver the fraud or mistake with particularity." Pa.R.C.P. 1019(b). Also, see *Sokoloff v. Strick*, 404 Pa. 343, 349, 172 A.2d 302 (1961).

The plaintiffs have failed to allege with any such particularity either in their complaint or in testimony before this Court that fraud, accident or mistake exists. In addition, "it is not sufficient for the plaintiffs to aver that oral representations were fraudulently made without averring that they were fraudulently or by accident, or mistake omitted from the subsequent written contract." *Nicolella v. Palmer*, 432 Pa. 502, 507, 248 A.2d 20 (1968). Therefore, absent a showing of such fraud, accident or mistake, the plaintiffs are bound by the agreement as written and signed.

Therefore, the Court will enter an appropriate Order.